DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on remand from the Supreme Court of Ohio.
 {¶ 2} The case was originally before this court on appellant's appeal from a conviction of one count of receiving stolen property. Appellant's conviction arose from a traffic stop on January 29, 2003, which occurred as he was traveling eastbound on the Ohio Turnpike in Lucas County. Appellant was stopped after Trooper Stacey Arnold of *Page 2 
the Ohio State Highway Patrol observed him drift over the center line. Appellant has not disputed the legality of the traffic stop. When Trooper Arnold returned to her car to check the validity of appellant's driver's license and determine whether there were any existing warrants against him, she called for backup from her partner, Trooper Alejo Romero, and asked him to bring a canine to the scene to perform a "walk around" to check for the presence of illegal drugs. When the drug-sniffing dog alerted on the vehicle, Arnold and Romero searched the van and found boxes containing 144 videotapes and 95 DVDs, which they confiscated.
 {¶ 3} On February 12, 2003, appellant was indicted on one count each of theft, receiving stolen property, trademark counterfeiting, money laundering and forgery. Appellant entered a plea of not guilty and subsequently filed a motion to suppress all evidence gathered as a result of his warrantless detention and arrest. A hearing was held and the trial court denied the motion. The case was tried to a jury and appellant was found guilty of theft and receiving stolen property; he was acquitted of trademark counterfeiting and money laundering. The jury was unable to reach a verdict as to forgery and a mistrial was declared as to that count. Additionally, the trial court later granted appellant's motion for a verdict of acquittal as to the theft conviction. Appellant was sentenced to six months incarceration and four years of community control on the receiving stolen property conviction. The trial court issued a stay of sentence pending appeal.
 {¶ 4} On appeal to this court, appellant argued in part that the evidence against him should have been suppressed because it was found during a routine traffic stop that *Page 3 
became an unconstitutionally lengthy search and seizure. We found merit in appellant's assignment of error regarding the motion to suppress, reversed the decision of the trial court, and declined to address two remaining assignments. State v. Batchili, 6th Dist. No. L-04-1039,2005-Ohio-6001.
 {¶ 5} The state of Ohio appealed this court's decision to the Supreme Court of Ohio, which accepted the case for review. In its decision, the Ohio Supreme Court found that reasonable suspicion under the totality of the circumstances justified appellant's detention while state troopers conducted a warrantless search of his vehicle, and that constitutional protections of the Fourth Amendment therefore were not violated by the police action in this case. By judgment entry filed May 23, 2007,State v. Batchili, 113 Ohio St.3d 403, 2007-Ohio-2204, the Ohio Supreme Court reversed the judgment of this court and remanded the matter for consideration of the two assignments of error which we found moot in our decision.
 {¶ 6} As a result of the decision of the Ohio Supreme Court reversing our finding that the evidence should have been suppressed, the following two assignments of error are before us on remand:
 {¶ 7} "II. There was insufficient evidence offered that Batchili received stolen property in the form of illegal video tapes or DVDs.
 {¶ 8} "III. The lower court erred in failing to instruct the jury that it had to make a finding as to the value of the tapes and DVDs, which is an essential element of the crime of receiving stolen property." *Page 4 
 {¶ 9} In support of Assignment of Error No. II, appellant asserts that the state did not produce sufficient evidence that the tapes and DVDs were pirated and that appellant knew that they were stolen.
 {¶ 10} The Supreme Court of Ohio has defined the proper standard of appellate review in examining a challenge of a criminal conviction based upon an alleged failure to meet the "sufficiency of the evidence" standard. A reviewing court must determine whether the evidence submitted was legally sufficient to support the elements of the crime.State v. Thompkins (1997), 78 Ohio St.3d. 380, 386-387, 1997-Ohio-52. The reviewing court must determine whether a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus. As this court has consistently affirmed, the trier of fact is vested with the discretion to weigh and evaluate the credibility of conflicting evidence in reaching its determination. It is not within the proper scope of the appellate court's responsibility to judge witness credibility. State v. Hill, 6th Dist. No. OT-04-035, 2005-Ohio-5028, ¶ 42
.
 {¶ 11} Appellant was found guilty of violating R.C. 2913.51(A) and (C):
 {¶ 12} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 13} "* * * *Page 5 
 {¶ 14} "(C) Whoever violates this section is guilty of receiving stolen property. * * * [I]f the value of the property involved is five thousand dollars or more and is less than one hundred thousand dollars, * * * receiving stolen property is a felony of the fourth degree."
 {¶ 15} It is undisputed that on January 29, 2003, appellant was driving the van in which the videotapes and DVDs were found. He was the only occupant of the van. Trooper Arnold testified that when she pulled into traffic and activated her overhead lights appellant continued to drive "for a minute or two." When appellant finally pulled over, he provided registration which indicated that he was not the owner of the van. Appellant first told Arnold that the vehicle belonged to a friend; he then said it belonged to a cousin. Appellant told the officer he had driven from New York, where he lives, to Chicago for two days. He initially told the officer he had been visiting a friend but then said it was a cousin he had gone to see. He did not have an address for the person he had been visiting and said that when he arrived in the Chicago area he called someone who drove to meet him. He did not know the phone number he had called. When Arnold initially looked inside the back of the van, she saw some "box shaped items" covered by a sheet. When the search was conducted, the troopers found four cardboard boxes containing 239 videotapes and DVDs. When asked, appellant said he did not know anything about the videotapes and DVDs; he said he had seen the blanket covering the boxes but did not look any closer.
 {¶ 16} Trooper Arnold also testified that she found several work orders indicating that appellant had recently paid for repairs to the van — the same van he told the officer *Page 6 
belonged to a friend or cousin. The first work order indicated that appellant paid $220 for repairs in Chicago on September 16, 2002, four months prior to the traffic stop; the second reflected that he paid $3,100 for additional repairs to the same van in New York one day later. Both work orders were offered and admitted into evidence. Trooper Arnold further testified that she found two traffic tickets in the van that indicated appellant had received two citations 15 days prior to the stop in this case while again traveling east through Pennsylvania on Interstate 80 in the same vehicle. The two citations were admitted into evidence.
 {¶ 17} Trooper Romero's testimony as to the search of the van confirmed that of Trooper Arnold. The state also presented the testimony of Earl Smith, an investigator for the Motion Picture Association of America. Smith was qualified without objection as an expert in the area of identifying and valuing illegally produced ("pirated") videos. Smith testified that he was contacted by the Ohio State Highway Patrol and asked to examine the videos and DVDs that had been confiscated in this case to determine whether they were genuine or pirated. After looking at the items, he concluded that they were "absolutely non-genuine pirated copies." Smith estimated that the total value of the items to the movie studios was $8,206.
 {¶ 18} At the close of the state's case, the defense moved for a judgment of acquittal as to all counts in the indictment; the trial court denied the motion. The defense did not present any witnesses at trial but offered into evidence three pages of statements Trooper Arnold took from appellant after his arrest; the statement forms were admitted into evidence. The forms reflected appellant's statements to the trooper that he was going *Page 7 
to Chicago to visit "my friend, no my cousin;" that he did not have an address or phone number for the location he had visited; that he did not know how the tapes and DVDs got into the van or to whom they belonged, and that he did not look under the sheet that was covering the boxes. The form also reflects that when the trooper later asked appellant whether his fingerprints would be on the boxes, he said, "OK, I saw the cover in Indiana."
 {¶ 19} This court has thoroughly reviewed the entire record of proceedings in this case. Upon consideration of the evidence as summarized above in a light most favorable to the prosecution, we find that the evidence, if believed, was sufficient to convince the jury that appellant knew or had reasonable cause to know that the videotapes and DVDs in the van he was driving were stolen property. Accordingly, appellant's argument that the evidence was insufficient to support a finding of receiving stolen property is without merit and his second assignment of error is not well-taken.
 {¶ 20} In support of his third assignment of error, appellant asserts that the trial court failed to instruct the jury to determine a value for the tapes and DVDs. This court has reviewed the transcript of the trial court's instructions to the jury, in particular its instructions regarding the charge of receiving stolen property. While the court gave a thorough instruction as to the elements of the offense, it did not instruct the jury to make a finding as to the value of the stolen property if it found him guilty of that charge.
 {¶ 21} As indicated on the verdict form, after finding appellant guilty of receiving stolen property in violation of R.C. 2913.51(A) and (C), the jury found that the value of the property involved was $5,000 or more and less than $100,000. The verdict form contained in relevant part the following language: *Page 8 
 {¶ 22} "*In the event that you find the Defendant Not Guilty, you willsign the verdict form in ink and that will conclude your deliberationsas to this charge. In the event you find the Defendant Guilty, you willproceed to complete the following:
 {¶ 23} "WE, the jury, having found the defendant guilty of Count Four,Receiving Stolen Property, in violation of R.C. 2913.51(A) (C), a felony of the fourth degree, as charged in the indictment; we further find that the value of the property (involved) was (**) 5,000 or moreand less than 100,000
 {¶ 24} "(**) Insert in ink: either less than $500'
 or `$500 or more and less than $5,000'
 or `$5,000 or more and less than $100,000'
 or `$100,000 or more'" [Emphasis in original.]
 {¶ 25} The verdict form itself instructed the jury to make a finding as to the value of the property involved, clearly setting forth the possible range in values as set forth in R.C. 2913.51(C). Appellant does not argue that he was prejudiced or that the outcome of the trial would have been different had the trial court included an instruction regarding possible value for the property involved, nor is there anything in the record to suggest to this court that the outcome of the trial would have been different. Accordingly, we find that the trial court's instruction to the jury on the charge of receiving stolen property was proper and appellant's third assignment of error is not well-taken.
 {¶ 26} On consideration whereof, this court finds that appellant was not prejudiced or denied a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. *Page 9 
Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR. *Page 1