DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of receiving stolen property. For the reasons that follow, this court reverses the judgment of the trial court.
 {¶ 2} On January 29, 2003, appellant was stopped on the Ohio Turnpike by Trooper Stacey Arnold of the Ohio State Highway Patrol after Arnold observed appellant drift over the center line. After determining appellant had no criminal record or existing warrants, Trooper Arnold radioed for another officer to bring a canine to the scene to perform a "walk around." When the drug-sniffing dog alerted, Arnold and the other trooper searched the van, where they found boxes containing 144 videotapes and 95 DVDs, which they confiscated. On February 12, 2003, appellant was indicted on one count of theft in violation of R.C.2913.02(A)(1) and (B); one count of receiving stolen property in violation of R.C. 2913.51(A) and (C); one count of trademark counterfeiting in violation of R.C. 2913.34(A)(3) and (B)(4); one count of money laundering in violation of R.C. 1315.55(A)(3) and 1315.59(C); and one count of forgery in violation of R.C. 2913.31(A)(3) and (C)(1)(b)(i). Appellant entered a plea of not guilty, and on May 14, 2003, he filed a motion to suppress all evidence gathered as a result of his warrantless detention and arrest. A hearing was held on the motion on May 27, 2003, and the following evidence was presented by the state.
 {¶ 3} Trooper Arnold testified that while watching eastbound traffic on the turnpike she observed appellant's van pass by and decided to follow. She stated that appellant did not commit a traffic offense as he drove past. She followed appellant briefly and observed him cross over the center line by less than the width of one tire, which would constitute a violation of the marked lanes section of R.C. 4511.33. The trooper turned on her overhead lights to signal appellant to pull over. She testified appellant did not stop for another two miles, which caused her to be concerned. As she approached the vehicle she noticed the rear windows were tinted, which also caused her concern. She then approached appellant and asked for his driver's license and vehicle registration. The registration showed appellant did not own the vehicle. This caused her to be concerned that appellant may not have the owner's permission to drive the vehicle or that it may have been stolen. Arnold further testified appellant appeared nervous and avoided eye contact with her. He also gave her two conflicting answers as to who owned the vehicle. Arnold then ran appellant's driver's license to check the validity and see if there were any warrants issued against appellant. She called for backup from her partner, Trooper Al Romero, and asked him to do a "walk around" with his canine because she felt there was other criminal activity taking place. Trooper Romero arrived and his dog indicated as to the vehicle. Based on the dog's response, Arnold conducted a warrantless search of the van, where she found several boxes of video tapes and DVDs in the rear cargo area. Arnold then placed appellant under arrest. Trooper Arnold further testified that when she approached the vehicle she did not notice the odor of any alcoholic beverages or drugs. The trooper stated that her suspicions of criminal activity arose because appellant did not own the vehicle, he appeared nervous, he gave two different answers as to who owned the vehicle, and she saw boxes covered with blankets when she walked past the rear windows.
 {¶ 4} Trooper Alejo Romero testified he responded to Arnold's request and walked his dog around appellant's van. He corroborated Arnold's testimony that they searched the van after the dog indicated.
 {¶ 5} On October 14, 2003, the trial court denied appellant's motion to suppress evidence seized as a result of the stop. On January 12 and 13, 2004, the case was tried to a jury. Appellant was convicted of theft and receiving stolen property and acquitted of trademark counterfeiting and money laundering. The jury was unable to reach a verdict as to forgery and a mistrial was declared as to that count. The trial court later granted appellant's motion for a verdict of acquittal as to the theft conviction. On February 4, 2004, appellant was sentenced to six months incarceration and four years of community control on the receiving stolen property conviction. On May 17, 2004, the trial court issued a stay of sentence pending appeal.
 {¶ 6} In his first assignment of error, appellant asserts Trooper Arnold did not have sufficient cause to prolong the traffic stop long enough for another trooper to respond with the drug dog and search the vehicle and that his continued detention constituted an illegal seizure. Appellant does not contest the initial traffic stop. Appellant argues that the arrival of the canine unit occurred well beyond the length of time it should have taken Trooper Arnold to write a traffic citation for a marked lane violation. Appellant notes that Trooper Arnold never wrote a trafficcitation. Appellant further argues that the troopers unreasonably prolonged the traffic stop and that once a reasonable period of time for issuing a traffic citation passed, an officer cannot continue the detention unless he has a reasonable, articulable suspicion of illegal activity sufficient to justify an extension of the detention.
 {¶ 7} In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of the witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275. The reviewing court is bound to accept the trial court's findings when they are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 8} A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth Amendment and the Ohio Constitution. See State v. Heinrichs (1988),46 Ohio App.3d 63, 65, citing Delaware v. Prouse (1979), 440 U.S. 648,653. In the case at bar, it is undisputed that Trooper Arnold stopped appellant's vehicle after she observed appellant drift over the line between lanes. Therefore, appellant was "seized" under both the Fourth Amendment and the Ohio Constitution the moment he was pulled over.
 {¶ 9} Once a police officer has made a legitimate and constitutional stop of a vehicle, the driver and the vehicle may be detained only for as long as the officer continues to have a reasonable suspicion that there has been a violation of the law. State v. Meyers (1990),63 Ohio App.3d 765 at 771, citing State v. Chatton (1984),11 Ohio St.3d 59. If, for example, after inspecting the vehicle, issuing a citation or talking with the driver, the police officer is satisfied that there has been no further unlawful activity, "the driver must be permitted to continue on his or her way." Meyers, supra at 771. In other words, an officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot. See United States v. Brignoni-Ponce (1975), 422 U.S. 873, 881-882
(unequivocal in saying that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop). See, also, Terry v. Ohio (1968), 392 U.S. 1 at 19. ("The scope of the [seizure] must be strictly tied to and justified by the circumstances which rendered its initiation permissible.").
 {¶ 10} "The mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer `open season' to investigate matters not reasonably within the scope of his suspicion." Fairborn v. Orrick (1988),49 Ohio App.3d 94, 95. See, also, Chatton and Meyers, supra.
 {¶ 11} We stress that such an investigation must be justified by some objective manifestation that the person stopped is, "or is about to be, engaged in criminal activity." United States v. Cortez (1981),449 U.S. 411, 417. As was stated in Meyers, supra, "if circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer is satisfied that the suspicion that justified the stop initially has dissipated." 63 Ohio App.3d at 771.
 {¶ 12} This court has repeatedly disapproved of law enforcement's practice of using the lawfulness of an initial stop to support a "fishing expedition" for evidence of crime. State v. Correa (1995),108 Ohio App. 3d 362; State v. Gonyou (1995), 108 Ohio App. 3d 369;State v. Smotherman (July 29, 1994), Wood App. No. 93-WD-082; State v.Bevan (1992), 80 Ohio App. 3d 126.
 {¶ 13} We must conclude in this case that Trooper Arnold lacked a reasonable, articulable suspicion sufficient to detain appellant and have a drug-detecting dog brought to the scene. Trooper Arnold testified that there were some "indicators" which caused her "concern" as she followed and then stopped appellant. The facts Trooper Arnold mentioned as causing her concern were that appellant did not pull over right away; he was not the owner of the car; at one point he said the van belonged to his cousin and at another said it belonged to a friend; the van had tinted rear windows; appellant's hands trembled and he did not make eye contact with her. Arnold also testified she thought it odd that appellant was traveling all the way from New York to Chicago for only two days. The relevant inquiry, however, is not whether the particular conduct is innocent or guilty, but rather the degree of suspicion that attaches to those particular non-criminal acts. United States v. Sokolow (1989),490 U.S. 1.
 {¶ 14} We find that the state did not present evidence of specific and articulable facts giving rise to a reasonable suspicion of criminal activity beyond that which prompted the stop. By the time the drug dog arrived on the scene, Trooper Arnold knew appellant had a valid license and there were no warrants issued on him. She also had confirmed that the vehicle was not stolen. Based on the trooper's testimony, the only remaining factors that might arguably have caused her concern were the van's tinted windows, appellant's nervous demeanor, his brief trip from New York to Chicago, appellant's conflicting responses as to who owned the vehicle, and the boxes covered with a blanket in the back of the van. None of those factors, when considered alone, would be sufficient to support a finding of reasonable suspicion. These days, tinted automobile windows are extremely common. Also, most people display some degree of nervousness when stopped by the police. Further, whether a two-day visit in Chicago after driving from New York is "extremely short," is a matter of personal opinion. The record reveals that appellant, whose native language is French, was provided with an interpreter at his court proceedings; it is possible that appellant's use of both the word "friend" and "cousin" to describe the owner of the vehicle when first asked by Trooper Arnold was a result of appellant's lack of fluency in the English language. Finally, there could be many legitimate reasons for transporting boxes covered with a blanket in the back of a cargo van.
 {¶ 15} This court is also troubled by the fact that Trooper Arnold never cited appellant for the traffic offense which prompted the stop. Although she testified she returned to her cruiser to verify appellant's license and vehicle registration and write the citation, in the time between the initial stop and the arrival of Trooper Romero with his dog, no citation was written. Based on the testimony presented at the suppression hearing, we find that the troopers' "expanded investigation" went beyond the parameters warranted by the initial stop and was not supported by a reasonable, articulable suspicion of further criminal activity. As such, the search of appellant's vehicle was violative of the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 14 of the Ohio Constitution. Accordingly, the trial court erred by denying appellant's motion to suppress and appellant's first assignment of error is found well-taken.
 {¶ 16} Based on our finding as to appellant's first assignment of error, his second and third assignments of error are rendered moot.
 {¶ 17} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded for further proceedings consistent with this decision and judgment entry. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Parish, J., concur.
Peter M. Handwork, J., dissents and writes separately