THE STATE OF OHIO, APPELLANT, *v.* BATCHILI, APPELLEE.

[Cite as *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204.]

(No. 2005–2420—Submitted December 12, 2006—Decided May 23, 2007.)

**O'CONNOR, J.**

{¶ 1} In this case, we are called upon to determine whether the Fourth Amendment is violated when a police officer conducting a traffic stop calls for a canine "walk around" while waiting for the results of a criminal background check. We conclude that constitutional protections of the Fourth Amendment were not violated by the police action in this case.

## I. Background

{¶ 2} Lacina Batchili was convicted after a jury trial of one count of theft and one count of receiving stolen property. The evidence produced at trial resulted from a traffic stop on the Ohio Turnpike on January 29, 2003. Before trial, Batchili had unsuccessfully moved to dismiss all evidence resulting from the warrantless detention and arrest. Batchili appealed his conviction, arguing in part that the evidence should have been suppressed because it was found during a routine traffic stop that became an unconstitutionally lengthy search and seizure.[1]

{¶ 3} Ohio State Highway Patrol Trooper Stacey Arnold testified that prior to the stop, she had decided to follow the van that Batchili was driving. After observing Batchili commit a marked-lanes violation, see R.C. 4511.33, she activated her overhead emergency lights to signal Batchili to pull over. He did not do so for two miles.

{¶ 4} Trooper Arnold observed that Batchili's van had tinted windows and a cargo hold containing boxes in disarray, which were covered with blankets. She asked for and received Batchili's driver's license and registration, which indicated that Batchili did not own the vehicle. Batchili gave conflicting answers as to who owned the vehicle, did not make regular eye contact, and had shaking hands. In addition, Trooper Arnold smelled deodorizer in the vehicle.

{¶ 5} Trooper Arnold returned to her cruiser to check the validity of the driver's license and to determine whether there were any warrants against Batchili. She also called for backup from her partner, Trooper Alejo Romero, whom she asked to conduct a "walk around with the canine" to detect drugs. Trooper Romero arrived, and the dog immediately alerted on the vehicle.

---

1. Finding merit in this assignment of error, the Sixth District declined to address the remaining assignments.

{¶ 6} Because of the dog's response, the troopers conducted a warrantless search of the van, in which they found boxes of pirated videotapes and DVDs, but no drugs. Batchili was then arrested and later indicted on one count of theft, one count of receiving stolen property, one count of trademark counterfeiting, one count of money laundering, and one count of forgery.

{¶ 7} The Sixth District Court of Appeals agreed with Batchili's argument that the evidence should have been suppressed. *State v. Batchili*, 6th Dist. No. L–04–1039, 2005-Ohio-6001, 2005 WL 3008917. It held that the state did not present evidence of "specific and articulable facts giving rise to a reasonable suspicion of criminal activity beyond that which prompted the stop." Id., ¶ 14. As a result, the court held that the search violated the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution because "[n]one of those factors [that had concerned the state trooper], *when considered alone*, would be sufficient to support a finding of reasonable suspicion." (Emphasis added.) Id.

## II. Analysis

{¶ 8} The legality of the traffic stop is not disputed. The officers' suppression-hearing testimony that Batchili was pulled over for a marked-lane violation is uncontroverted and served as the lawful basis for the stop. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus. The focus of the inquiry, therefore, is whether there was an illegally prolonged detention of Batchili, given the trooper's observations.

{¶ 9} The Sixth District's opinion strays from clearly established precedent in three ways. First, it fails to conduct any analysis as to whether the length of the stop was impermissible before the dog arrived at the scene of the stop. Second, it misapplies the "reasonable and articulable suspicion" standard to conclude that the request for the dog was unconstitutional. Finally, it describes the failure to issue a citation for the marked-lane violation as a troubling factor.

{¶ 10} The Sixth District found merit in Batchili's assertion that Trooper Arnold did not have sufficient cause to prolong the traffic stop until another trooper responded with the dog and that Batchili's continued detention for that purpose constituted an illegal seizure. The essential argument is that the arrival of the canine unit took longer than it should have taken Trooper Arnold to write a traffic citation for a marked-lane violation. However, the Sixth District never analyzed whether the length of the stop prior to the dog's alert was reasonable.

{¶ 11} The Fourth Amendment imposes a reasonableness standard upon the exercise of discretion by government officials. *Delaware v. Prouse* (1979), 440 U.S. 648, 653–654, 99 S.Ct. 1391, 59 L.Ed.2d 660. "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the

individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660. To justify a particular intrusion, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 12} The facts of this case are almost directly aligned with those of the Twelfth District Court of Appeals case *State v. Howard,* Preble App. Nos. CA2006–02–002 and CA2006–02–003, 2006-Ohio-5656, 2006 WL 3059799, ¶ 15, which held, "[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden,* Preble App. No. CA2003–03–007, 2004-Ohio-184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605]."

{¶ 13} The record establishes that at the time the dog alerted, eight minutes and 56 seconds into the stop, Trooper Arnold was still waiting for the results of the criminal-background check. She further testified that it would take her approximately five to ten minutes to issue a warning, and anywhere from ten to 20 minutes to issue an actual citation.

{¶ 14} There simply is no evidence to suggest that Batchili's detention for the traffic violation was of sufficient length to make it constitutionally dubious. A traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle. There is no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation.

{¶ 15} Moreover, assuming the detention *was* actually prolonged by the request for a dog search, "the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *State v. Myers* (1990), 63 Ohio App.3d 765, 771 [580 N.E.2d 61];

*State v. Venham* [1994], 96 Ohio App.3d [649,] 655 [645 N.E.2d 831]." *Howard,* 2006-Ohio-5656, 2006 WL 3059799, at ¶ 16.

{¶ 16} It is here that the Sixth District's reasoning takes a drastic turn from established law. It noted that an extended investigation must be justified by an "objective manifestation that the person stopped is, 'or is about to be, engaged in criminal activity.'" *Batchili,* 2005-Ohio-6001, 2005 WL 3008917, ¶ 11, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 17} It failed to note, however, that the "reasonable and articulable" standard applied to a prolonged traffic stop encompasses the totality of the circumstances and that a court may not evaluate in isolation each articulated reason for the stop. *United States v. Arvizu* (2002), 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740.

{¶ 18} The Sixth District here did exactly what the United States Supreme Court prohibited in *Arvizu*: it substituted its own judgment as to each of the reasons listed supporting Trooper Arnold's justification for her articulable suspicion and concluded that because each had an innocent explanation, her suspicion was not reasonable. *Batchili,* 2005-Ohio-6001, 2005 WL 3008917, ¶ 14. The court even concluded, "[N]one of those factors, *when considered alone,* would be sufficient to support a finding of reasonable suspicion." (Emphasis added.) Id.

{¶ 19} *Terry* "precludes this sort of divide-and-conquer analysis." *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744, 151 L.Ed.2d 740. The "reasonable and articulable suspicion" analysis is based on the *collection* of factors, not on the individual factors themselves. Here, Trooper Arnold listed a number of causes for suspicion (failure to stop for two miles, nervous interaction, multiple statements as to who owned the vehicle, tinted windows, cargo compartment in disarray and with blankets covering boxes, and a vehicle smelling of deodorizer), which cumulatively provided a sufficient reason for additional detention for the purposes of a canine walk-around. Therefore, even if the length of the detention had been unreasonable for the sole purpose of issuing the citation, Trooper Arnold was justified in extending the stop for a canine search.

{¶ 20} The Sixth District also noted that it was "troubled" that Trooper Arnold never cited Batchili for the traffic offense that prompted the stop. *Batchili,* 2005-Ohio-6001, 2005 WL 3008917, ¶ 15. This observation suffers from logical and legal difficulties. First, Trooper Arnold was interrupted by the dog alert while receiving the criminal-background check. The failure to issue a traffic citation when there is an indication of a potentially far more significant crime is easily excused when more pressing issues are being addressed.

{¶ 21} Further, as two other districts have recognized, the constitutionality of a prolonged traffic stop does not depend on the issuance of a citation. *State v. Carlson* (1995), 102 Ohio App.3d 585, 596–597, 657 N.E.2d 591; *Keathley,* 55 Ohio App.3d at 132, 562 N.E.2d 932. This reasoning is well supported by our prior

holding: "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus.

{¶ 22} There has been no challenge to the probable cause regarding the stop. As discussed above, the canine walk-around was not the product of an unreasonably long detention relating to the ultimate issuance of the citation. Even if the traffic stop had been prolonged, reasonable suspicion under the totality of the circumstances justified the ongoing detention. Therefore, the judgment of the court of appeals is reversed, and the matter is remanded for consideration of Batchili's remaining assignments of error.

Judgment reversed
and cause remanded.

Moyer, C.J., Walsh, Lundberg Stratton and Lanzinger, JJ., concur.

Pfeifer, J., dissents.

O'Donnell, J., would dismiss the cause as having been improvidently accepted.

James E. Walsh, J., of the Twelfth Appellate District, was assigned to sit for Resnick, J., whose term ended on January 1, 2007.

Cupp, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

Pfeifer, J., dissenting.

{¶ 23} The majority opinion characterizes the traffic stop that occurred in this case as routine. A review of the arresting trooper's testimony suggests that if this was a routine traffic stop, we should all be very afraid.

{¶ 24} Trooper Arnold testified that she was parked at mile marker 53 on the Ohio Turnpike when a van driven by Lacina Batchili passed her. The trooper testified that the van was not in violation of any traffic laws when it passed her and that nothing about the van attracted her attention. For no reason other than "[b]ecause I wanted to," the trooper decided to leave her parked position and drive on the highway to observe traffic. The trooper caught up with the van driven by Batchili as the van approached mile marker 55. Based on her stationary starting position and the van's speed of approximately 65 miles per hour, the trooper testified she would have had to travel in excess of 100 miles per hour, possibly as fast at 120 miles per hour, to catch up to the van by mile marker 55. When asked whether she often left a stationary starting position and drove that fast to observe traffic when no violation had occurred, the trooper responded: "It happens quite frequently."

{¶ 25} After catching up with the van driven by Batchili, the trooper observed the van "drift over the dotted center line by approximately the width of the driver's side tires. * * * The vehicle then drifted back into the driving lane proceeding eastbound." Drifting across a marked lane on a roadway can be a violation of R.C. 4511.33(A)(1), which states, "A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

{¶ 26} First, there is no indication in the record that the van's drifting across the center line was unsafe. If there was little or no traffic, the drifting would not have endangered anyone.

{¶ 27} Second, it's a bit ironic that a trooper would drive over 100 miles per hour for no apparent reason, behavior that is surely more unsafe than an inadvertent lane drift, and then pull over a driver for a de minimis violation.

{¶ 28} Third, imagine if every driver (or even ten percent of them) who drifted across a lane were pulled over. There would be no time for troopers to do anything else. Traffic and commerce would move more slowly, courts would be more crowded, and the residents of this state would not be safer.

{¶ 29} It is inconceivable to me that this court would sanction the trooper's conduct in this case. The trooper never mentioned a reason for pulling over the van besides the putative violation of R.C. 4511.33. Had the trooper noticed a pattern of erratic lane changes, the traffic stop would have been warranted. Had the trooper articulable reasons to be suspicious of the van or its driver, the traffic stop would have been warranted. I respect Trooper Arnold and her dedication to duty. According to Ohio State Highway Patrol media releases, she has a tremendous record of felony arrests. I suspect that her instincts told her something was amiss, but instincts are not enough to justify a pretextual traffic stop. And given the de minimis nature of the possible violation and the trooper's failure to cite Batchili for violating R.C. 4511.33, I am forced to conclude that this traffic stop was a pretext and, therefore, that the traffic stop was unreasonable. Consequently, there is no need to determine whether the length of the detention was unreasonable because the traffic stop itself was unjustified. I would affirm the judgment of the court of appeals, though for reasons different from those discussed by the court of appeals.

{¶ 30} In *Blue Ash v. Kavanagh,* 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 30, this court sanctioned the deployment of a drug-sniffing dog whenever a driver is pulled over and his or her license or registration has expired. In this case, this court sanctions the deployment of a drug-sniffing dog

whenever a driver drifts across a marked lane. I wonder what this court will sanction next. I dissent.

---

Julia R. Bates, Lucas County Prosecuting Attorney, and Kevin A. Pituch, Assistant Prosecuting Attorney, for appellant.

Douglas A. Wilkins, for appellee.