[Cite as *State v. Hawkins*, 2012-Ohio-3137.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 12 CA 4 |
| SEAN HAWKINS | |
| | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 2011 CR 400


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      July 9, 2012


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

GREGG MARX      AARON R. CONRAD
PROSECUTING ATTORNEY      CONRAD LAW OFFICE
DARCY T. COOK      120 1/2 East Main Street
JOSELYN S. KELLY      Lancaster, Ohio 43130
ASSISTANT PROSECUTORS
239 West Main Street, Suite 101
Lancaster, Ohio 43130

*Wise, J.*

{¶1}     The State of Ohio appeals the January 23, 2012, decision of the Fairfield County Court of Common Pleas sustaining Appellee Sean Hawkins' motion to suppress evidence.

{¶2}     This case comes to us on the accelerated calendar.  App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:

{¶3}     "(E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11.1.  It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.  The decision may be by judgment entry in which case it will not be published in any form."

{¶4}     This appeal shall be considered in accordance with the aforementioned rule.

STATEMENTS OF FACTS AND CASE

{¶5}     The relevant facts are as follows:

{¶6}     On July 26, 2011, Chief Wesley Barton of Lithopolis Police Department stopped a Ford Escort for a traffic violation, (T. at 6-8). The owner of the vehicle, Appellee Sean Hawkins, was present in the vehicle during that stop with three other persons. (T. 6-7, 12).  At that time, due to a technical problem, Chief Barton was not able to verify information on the occupants of the vehicle. (T. at 6).  However, shortly after he conducted that stop, he learned from Fairfield-Hocking Major Crimes Unit (MCU) Detective Brian Winders that the vehicle was believed to be involved in transporting drugs from Columbus to Lancaster. (T. at 6-8).

{¶7} Approximately one week before August 26, 2011, Chief Barton again saw the vehicle but was unable to make a traffic stop. (T. at 11). After he began to follow the vehicle on that day, the vehicle turned in to a gas station. (T. at 11, 15). When Chief Barton circled the block, the vehicle left town by an alternate route and Chief Barton was unable to locate it again that day. (T. at 11, 15). Shortly after that sighting of Appellee's vehicle, Chief Barton learned that another member of law enforcement was looking for it, specifically, Deputy John Williamson, referred to by Chief Barton as Deputy Williams, of the Fairfield County Sheriff's Office Drug Interdiction Team. (T. at 11).

{¶8} Chief Barton was on duty on August 26, 2011, when he again observed the Ford Escort owned by Appellee. At this time, Chief Barton observed Appellee commit a traffic violation; specifically, the vehicle failed to yield at an intersection. (T. at 6, 8).

{¶9} Chief Barton's cruiser was equipped with a video and audio recording system and the stop was recorded. (T. at 9). According to the video time stamp, at 13:29 Chief Barton stopped the car. He obtained identification from its occupants and returned to his vehicle. At 13:33 dispatch informed Chief Barton that the vehicle's plates and registration were valid. The description of the car matched the Ford Escort. At that time, Chief Barton requested information about the occupants and asked that a canine unit respond to the scene. At the suppression hearing in this matter, he testified that he made this request because he had "prior intelligence from other agencies, other officers, that this vehicle and its occupants may be involved in drug transactions in going from Columbus to Lancaster." (T. at 21).

{¶10}    At 13:34 Chief Barton was informed that only one canine unit was in the area at that time and was unavailable because it was responding to another call.  At 13:36 Chief Barton was informed that there were no active warrants on Appellee or the driver, Cody Kammerling.

{¶11}    At 13:37, one minute after receiving the information that neither Appellee nor the driver had active warrants, Chief Barton requested that another unit respond to the scene for a possible consent search. At 13:38, another unit was dispatched to assist Chief Barton. At 13:39, Chief Barton asked if the driving record on Kammerling was available. (T. at 23).

{¶12}    Almost immediately, dispatch responded that Kammerling's license was valid and he had three prior convictions, all before 2008.

{¶13}    Chief Barton remained in his patrol car for another 5 minutes to await the arrival of another officer to assist him in searching the vehicle.

{¶14}    At 13:44, Chief Barton exited his vehicle and spoke to Deputy John James, who had arrived on the scene. (T. at 29-30). He told the deputy, "These guys are coming through every Friday bringing heroin back from Columbus."  He indicated to the deputy that he knew that two of the occupants had valid licenses and did not have any active warrants, but that he had not obtained information on the backseat passenger.

{¶15}    At 13:45, Chief Barton and the deputy approached the car. Chief Barton asked the driver, Kammerling, to exit the car and began to pat him down to ensure the officers' safety.  Chief Barton informed Kammerling that the pat-down search was being conducted "for your safety and mine." As Chief Barton began to ask a question, Kammerling stated that he had needles on his person. In response to further inquiry, Kammerling informed the officers that there was heroin in the car.  The officers asked

the remaining two occupants to step out of the vehicle, conducted pat-downs of each and then searched the vehicle.   Appellee informed the officers that the heroin could be found in the pop can in the center console. (Tr. 31-32). The search revealed paraphernalia and heroin hidden in a "make-believe soda pop can, which has a screw off lid." (T. at 31).

**{¶16}**   All three occupants were arrested and transported to jail. (T. at 10).

**{¶17}**   On September 2, 2011, Appellee Sean Hawkins was indicted on one count of Trafficking in Heroin, a violation of R.C. §2925.03(A)(2) and §2925.03(C)(6)(e), a felony of the second degree, punishable by a mandatory prison term, with a forfeiture specification pursuant to R.C. §2941.1417; and one count of Possession of Heroin, a violation of R.C. §2925.11(A) and §2925.11(C)(6)(d), a felony of the second degree, also punishable by a mandatory prison term.

**{¶18}**   On October 21, 2011, Appellee filed a Motion to Suppress Evidence.

**{¶19}**   On December 14, 2011, the trial court held an oral hearing on this motion.

**{¶20}**   On January 23, 2012, the trial court sustained the Motion to Suppress Evidence.

**{¶21}**   Appellant State of Ohio now appeals, setting forth the following Assignment of Error:

## ASSIGNMENT OF ERROR

**{¶22}**   "I. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE OFFICER HAD REASONABLE SUSPICION TO PURSUE AN INVESTIGATION AND DID SO DILIGENTLY."

**I.**

{¶23}   In its sole Assignment of Error, the State of Ohio argues that the trial court erred in sustaining Appellee's motion to suppress evidence. We disagree.

{¶24}   Initially, we note that the State derives its right to appeal in criminal cases from R.C. §2945.67(A), which "draws a distinction between an appeal as of right and an appeal by leave." *State v. Matthews,* 81 Ohio St.3d 375, 377, 691 N.E.2d 1041 (1998). R.C. §2945.67(A) defines the circumstances under which the State has an absolute right of appeal, and states, in pertinent part:

{¶25}   "A [prosecutor] * * * may appeal as a matter * * * [of] right any decision of a trial court in a criminal case * * * which decision grants (1) a motion to dismiss all or any part of an indictment, complaint, or information, (2) a motion to suppress evidence, or (3) a motion for the return of seized property or (4) grants post conviction relief * * * and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case * * *.

{¶26}   Here, the State filed a timely notice of appeal of the trial court's decision granting Appellee's motion to suppress evidence.

{¶27}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the

findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶28}    When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, *State v. Fanning* (1982), 1 Ohio St.3d 19, 20.

{¶29}    In this case, the State of Ohio argues that trial court erred in finding that the officer's detention of Appellee became unreasonable when it "lasted longer than necessary to effectuate the purposes of the stop."

{¶30}    "[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning." *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, at ¶ 12. (Quoting *State v. Keathley* (1988), 55 Ohio App.3d 130, 131). This measure includes the period of time sufficient to run a computer

check on the driver's license, registration, and vehicle plates. Further, "[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Batchili,* supra. (Internal quotation marks and citations omitted).

**{¶31}** However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Batchili, supra* 113 Ohio St.3d 403, 2007–Ohio–2204 at ¶ 15. (Citing *State v. Howard,* Preble App. Nos. CA2006–02–002 and CA2006–02–003, 2006–Ohio–5656 at ¶ 16). "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No. 2001–L–205, 2003–Ohio–702, ¶ 30, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178.

**{¶32}** In the case at bar, the record check of appellant's license, registration and vehicle status was completed in ten minutes and did not reveal any outstanding warrants. The officer then continued to detain the vehicle and its occupants for an additional nine minutes without any indication or reasonable suspicion of criminal activity.

**{¶33}** We therefore find that the stop was unlawfully prolonged and the continued detention and searches of the vehicle and its occupants was unreasonable.

**{¶34}** Appellant's sole Assignment of Error is overruled.

**{¶35}** For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 0628

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                                    :
                                                 :
    Plaintiff-Appellant                          :
                                                 :
-vs-                                             :         JUDGMENT ENTRY
                                                 :
SEAN HAWKINS                                     :
                                                 :
    Defendant-Appellee                           :         Case No. 12 CA 4


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.

Costs assessed to Appellant.


_____


_____


_____
                           JUDGES