[Cite as *State v. Wilcox*, 2012-Ohio-4582.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | |
| MELODY J. WILCOX | : | Case No. 12AP040028 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Case No. 2011CR010031


JUDGMENT:    Affirmed


DATE OF JUDGMENT:    September 25, 2012


APPEARANCES:

For Plaintiff-Appellee                           For Defendant-Appellant

MICHAEL J. ERNEST                          GERALD A. LATANICH
125 East High Avenue                         153 North Broadway
New Philadelphia, OH  44663            New Philadelphia, OH  44663

*Farmer, J.*

{¶1}   On January 31, 2011, the Licking County Grand Jury indicted appellant, Melody Wilcox, on one count of possessing drugs (crack cocaine) in violation of R.C. 2925.11.   Said charge arose from the discovery of crack cocaine in her purse after being stopped by New Philadelphia City Police Officer Paul Rossi for driving a motor vehicle with only one working headlight on August 25, 2010.

{¶2}   On June 30, 2011, appellant filed a motion to suppress, claiming an unreasonably prolonged stop and an illegal seizure of her purse.   A hearing was held on August 2, 2011.   By judgment entry filed February 2, 2012, the trial court denied the motion.

{¶3}   On March 5, 2012, appellant pled no contest to the charge.   By judgment entry filed same date, the trial court found appellant guilty.   By judgment entry filed April 17, 2012, the trial court sentenced appellant to two years of community control.

{¶4}   Appellant filed an appeal and this matter is now before this court for consideration.   Assignments of error are as follows:

I

{¶5}   "UNDER A TOTALITY OF THE CIRCUMSTANCES MELODY WILCOX WAS ILLEGALLY DETAINED IN VIOLATION OF THE FOURTH AMENDMENT."

II

{¶6}   "THE PURSE OF MELODY WILCOX WAS SEIZED BY THE OFFICER AND MS. WILCOX DID NOT CONSENT TO THE SEIZURE OR THE SEARCH IN VIOLATION OF THE FOURTH AMENDMENT."

I, II

{¶7}   Appellant claims the trial court erred in denying her motion to suppress as the length of her detention was unreasonably prolonged and the seizure of her purse was unlawful.  We disagree.

{¶8}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.  First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence.  *State v. Fanning* (1982), 1 Ohio St.3d 19; *State v. Klein* (1991), 73 Ohio App.3d 485; *State v. Guysinger* (1993), 86 Ohio App.3d 592.  Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact.  In that case, an appellate court can reverse the trial court for committing an error of law.  *State v. Williams* (1993), 86 Ohio App.3d 37.  Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93; *State v. Claytor* (1993), 85 Ohio App.3d 623; *Guysinger*.  As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 116 S.Ct. 1657, 1663, "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶9} Appellant argues the seventeen minute detention for a routine traffic stop was unreasonably prolonged and unlawful. Appellant points out a citation for the headlight violation was not even issued. In *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, ¶14-15, the Supreme Court of Ohio addressed the issue of a questionably prolonged stop as follows:

{¶10} "A traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle. There is no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation.

{¶11} "Moreover, assuming the detention *was* actually prolonged by the request for a dog search, 'the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.***' " (Citations omitted.)

{¶12} The *Batchili* court held at paragraphs two and three of the syllabus:

{¶13} "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop. *United States v. Arvizu* (2002), 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740, applied.

{¶14} "The constitutionality of a prolonged traffic stop does not depend on the issuance of a citation."

{¶15} In its February 2, 2012 judgment entry denying the motion to suppress, the trial court found the following facts:

{¶16} "1. Officer Paul Rossi became aware that the drug detectives were watching an apartment complex where drug activity was suspected.

{¶17} "2. On August 25, 2010, Officer Rossi observed a vehicle leave from the apartment complex in question. The vehicle had one headlight. Officer Rossi initiated a traffic stop for the extinguished light by activating his cruiser lights.

{¶18} "3. The vehicle traveled about a half block then pulled into a parking lot. During this time, Officer Rossi called for the K-9 unit.

{¶19} "4. At approximately 11:09 p.m., the vehicle stopped; Defendant turned off the engine and exited with her purse. Officer Rossi thought she would go inside the apartment building where she parked, so he directed her to stay with the vehicle. He was concerned by the location from where she drove, her failure to immediately pull over, and her unusual manner of exiting the vehicle.

{¶20} "5. Another cruiser came to the site of the traffic stop, as it is their practice to do so when it is night. Officer Norris, in the second cruiser, advised that the stopped vehicle had been involved in a 'cocaine bust' about one month prior.

{¶21} "6. The K-9 unit with Officer Randy Williamson arrived at 11:22 p.m. When this unit arrived, Officer Rossi directed the Defendant to step away from the car and leave her purse on the hood.

{¶22} "7. Officer Rossi determined the Defendant had a valid license and no outstanding warrants. He proceeded to complete a citation for the extinguished headlight.

{¶23} "8. During this time, Officer Williamson walked the dog around the vehicle. The dog alerted twice: first at the passenger side door, then at the purse. The dog alerted at 11:24 p.m.

{¶24} "9. When the dog alerted, Officer Rossi suspended his completion of the citation for the extinguished headlight. He eventually issued a warning, due to the cooperation of the Defendant.

{¶25} "10. Within the purse, Officers located a pipe, crack cocaine, and marijuana residue.

{¶26} "11. The Defendant was indicted on January 31, 2011 for One Count Possession of Drugs, in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree."

{¶27} Appellant was stopped for a headlight violation and immediately upon initiating the traffic stop, Officer Rossi called for the K-9 unit. T. at 18-19. Appellant jumped out of the vehicle and Officer Rossi asked her to stay with her vehicle. T. at 17-18. Officer Rossi asked appellant for her driver's license, registration, and proof of insurance and she could not produce one of those items. T. at 20. Officer Rossi then ran her information through LEADS to make sure she had a valid driver's license and did not have any outstanding warrants. Id. Once Officer Rossi determined appellant had a valid driver's license and no outstanding warrants, he began to issue appellant a citation for the headlight violation. T. at 21-22. At this time, the K-9 unit arrived. Officer Rossi was still writing the citation when the K-9 unit alerted to drugs. T. at 22, 34, 45.

{¶28} Based upon appellant's failure to produce the requested information that necessitated a LEADS check and the time needed to write out a traffic citation, we find the seventeen minute delay was not unconstitutional.

{¶29} Appellant also argues it was error and an illegal seizure to have her place her purse on the hood of the vehicle after the arrival of the K-9 unit:

{¶30} "THE WITNESS [OFFICER ROSSI]: As soon as Officer Williamson showed up on the scene, I got out, I, I believe I was in my car, I got out of my car, approached Officer Williamson, advised what we had. He starts getting his K-9 out of the vehicle. I approach Ms. Wilcox, advised her just, you know, step away from the car, just leave your purse on the hood of your car, step away from the vehicle the K-9's going to sniff the car.

{¶31} "MR. ERNEST: Do you have some concern that she is attempting to carry contraband or other illegal substances away from the car?

{¶32} "THE WITNESS: Yes, I did. I had some serious concern about that.

{¶33} "MR. ERNEST: Okay. Why? Why did you have that concern?

{¶34} "THE WITNESS: Based on the, the time of the phone call that Officer Norris received from Detective Ballentine concerning narcotic activity in the area that she left from, um, also, um, Officer Norris advised me at the beginning of my traffic stop, after I had called for Officer Williamson, he advised me that vehicle was involved in a, a large amount of crack cocaine that the OSP, Ohio State Highway Patrol, conducted about a month or so earlier. Um, and the fact that she jumps out, she took, she took a block, a half a block to stop after turning on my overhead lights, which is unusual, most drivers pull over right away as soon as a police officer signals for them to, that they're

stopping them for a traffic violation, they pull over right away. She drives about a half a block down the road. That was abnormal.

{¶35} "MR. ERNEST: Were there other opportunities to pull the car over - -

{¶36} "THE WITNESS: Right.

{¶37} "MR. ERNEST: - - in this area?

{¶38} "THE WITNESS: The other abnormal thing is most drivers don't get out of the vehicle then start walking around the front of the car. Most drivers, when you initiate a traffic stop, sit in the driver's seat and wait for the officer to approach.

{¶39} "MR. ERNEST: These were, um, actions that are, um, things that, that Ms. Wilcox did that gave you concern?

{¶40} "THE WITNESS: Right." T. at 25-27.

{¶41} Appellant argues there was a "seizure" of her person and purse when she was ordered to place the purse on the hood of the vehicle. However, there was no search of her person or purse until the alert by the K-9 unit. The K-9's actions indicated the presence of some type of narcotic. T. at 8-9.

{¶42} Appellee argues in *State v. Mercier,* 117 Ohio St.3d 1253, 2008-Ohio-1439, the Supreme Court of Ohio adopted the United States Supreme Court's position on "purses" in *Wyoming v. Houghton* (1999), 526 U.S. 295. The *Wyoming* court distinguished between the search of a passenger against the search of a passenger's belongings that remained in the vehicle. The *Wyoming* court concluded there was a governmental interest in searching belongings when there is a reason to believe contraband or evidence of criminal wrongdoing is hidden in the vehicle. Therefore, the expectation of privacy is reduced when property is transported in vehicles.

{¶43} If appellant had left her purse in the vehicle and the K-9 alerted to the vehicle, *Wyoming* and *Mercier* would apply. However, the facts sub judice are different. The purse, whether it was in appellant's possession or on the hood of the vehicle is inconsequential. The K-9 alerted to the presence of narcotics which would have permitted a search of the vehicle.

{¶44} The next question is whether such an alert can be extended to a search of the only occupant of the vehicle. We answer this question in the affirmative for the following distinctive reasons. Appellant was observed leaving an area where narcotic activity had taken place, and the specific vehicle was involved in a large crack cocaine case a month earlier. T. at 26. It took Officer Rossi a half block to stop appellant, and upon stopping, she jumped out of her vehicle and started walking away from the police car. T. at 17, 26-27.

{¶45} We conclude the K-9 alert, coupled with appellant's actions and previous location, gave rise to a reasonable suspicion that she was involved in criminal activity and probable cause to search her purse.

{¶46} Upon review, we find the trial court did not err in denying appellant's motion to suppress.

{¶47} Assignments of Error I and II are denied.

{¶48} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Edwards, J. concur.

s / Sheila G. Farmer_____

_s / William B. Hoffman_____

S / Julie A. Edwards_____

JUDGES

SGF/sg 828

[Cite as *State v. Wilcox*, 2012-Ohio-4582.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                    :

        Plaintiff-Appellee       :

                         :

-vs-                       :          JUDGMENT ENTRY

                         :

MELODY J. WILCOX        :

                         :

        Defendant-Appellant   :          CASE NO. 12AP040028

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed. Costs to appellant.

s / Sheila G. Farmer_____

_s / William B. Hoffman_____

S / Julie A. Edwards_____

                 JUDGES