[Cite as *State v. Fontaine*, 2013-Ohio-5257.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99771

---

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## JOSHUA A. FONTAINE

DEFENDANT-APPELLEE

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-569877

**BEFORE:**  Boyle, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**  November 27, 2013

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Melissa Riley
        Adam M. Chaloupka
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

**ATTORNEY FOR APPELLEE**

Michael J. Cheselka, Jr.
75 Public Square
Suite 920
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Plaintiff-appellant, state of Ohio, appeals the trial court's judgment granting the motion to suppress of defendant-appellee, Joshua Fontaine. The state raises one assignment of error for our review:

> The trial court erred in granting appellee's motion to suppress the evidence in this case as the detention and warrantless search of appellee's vehicle were not unreasonable.

{¶2} Finding no merit to the state's argument, we affirm.

Procedural History and Facts

{¶3} Fontaine was indicted on a single count of carrying a concealed weapon, which carried a forfeiture specification for a .40 caliber Sig Sauer pistol. The weapon was discovered during the course of a traffic stop. Fontaine moved to suppress the recovery of the weapon. The following evidence was produced at the suppression hearing.

{¶4} Ohio State Highway patrolman Jared Haslar testified that he stopped Fontaine for speeding on Pearl Road in Strongsville, Ohio at 2:27 a.m. on December 12, 2012. According to Patrolman Haslar, his radar unit reflected that Fontaine was traveling at 45 m.p.h. in a posted 35 m.p.h. speed zone. Patrolman Haslar approached Fontaine's vehicle, advised him of the reason for the stop, and then requested his driver's license, proof of insurance, and registration, which Fontaine immediately provided. Patrolman Haslar further stated that, during this exchange, he became suspicious of criminal activity. Specifically, Patrolman Haslar testified as follows: "While speaking to

Mr. Fontaine I felt that his body language and his behavior was a little bit unusual. He was extremely — like almost overly polite, and he was breathing heavily at times while I was talking to him."

{¶5} Patrolman Haslar returned to his patrol car and requested the Strongsville Police Department to have a canine come to the scene to assist. He then made a LEADS inquiry on the computer terminal in his vehicle in reference to Fontaine's driving record and registration, verifying that Fontaine was "able to be operating a motor vehicle." After finishing his inquiry in the LEADS system, Haslar "began writing out a written warning for the speed." Next, Patrolman Derek Feierabend, a canine handler, arrived on the scene with a canine. At that point, Patrolman Haslar returned to Fontaine's vehicle, asked him to exit the vehicle, and then escorted Fontaine back to his patrol car. Prior to placing Fontaine inside the patrol car, Haslar patted him down for weapons as a safety precaution.

{¶6} Patrolman Haslar explained why he removed Fontaine from his own vehicle as follows:

> It's an officer's safety issue for the canine handler as he's walking the dog around because his attention is focused on running the dog around the vehicle, conducting a sniff, and it's difficult to be watching a person inside the vehicle and do the job with the canine as well.

{¶7} Patrolman Feierabend "conducted the sniff of the vehicle with his canine," and ultimately alerted Patrolman Haslar that the canine had a positive alert to the passenger's side of the vehicle. Haslar then searched the vehicle, finding a loaded .40 caliber handgun and a plastic bag containing marijuana in the glove box.

{¶8}   Patrolman Haslar further testified that a routine traffic stop typically takes him 12 minutes to conduct from start to finish.   According to Haslar, ten minutes had elapsed from the point that he initiated the traffic stop to the point of Patrolman Feierabend walking the dog around the car.

{¶9} The trial court ultimately granted Fontaine's motion to suppress the firearm and marijuana, which the state now appeals.

## Standard of Review

{¶10} In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, the Ohio Supreme Court set forth our standard of review:

> Appellate review of a motion to suppress presents a mixed question of law and fact.   When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.   Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.)

## Detention Pursuant to the Traffic Stop

{¶11} In its sole assignment of error, the state argues that the trial court should have denied Fontaine's motion to suppress because (1) the police lawfully stopped Fontaine pursuant to a traffic stop, (2) the traffic stop was not unreasonably extended to allow for the canine sniff, and (3) the warrantless search of the vehicle was justified based on the positive alert from the canine.

{¶12} The legality of the traffic stop is not disputed. Nor does either party challenge the well-established precedent that police have probable cause to search a vehicle once a properly trained dog indicates the odor of drugs in a lawfully-detained vehicle. *See State v. Bordieri*, 6th Dist. Lucas No. L-04-1321, 2005-Ohio-4727, ¶ 22. Instead, the critical issue in this case is whether the police unreasonably prolonged the traffic stop to conduct the canine sniff, thereby detaining Fontaine beyond the scope of the initial traffic stop.

{¶13} "[A] traffic stop must comply with the Fourth Amendment's general reasonableness requirement." *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 33, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable." *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 10 (2d Dist.), citing *State v. Chatton*, 11 Ohio St.3d 59, 63, 463 N.E.2d 1237 (1984).

{¶14} "'[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or a warning.'" *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12, quoting *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (2d Dist.1988). "This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Id.*, citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007,

2004-Ohio-184, ¶ 17. "Further, '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" *Id.*, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591 (9th Dist.1995), citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), and *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

{¶15} "'[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'" *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). Moreover, "the use of a well-trained narcotics-detection dog" during a traffic stop does not, in itself, infringe any constitutionally protected privacy interests. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

{¶16} In order to remain within the scope of the initial traffic stop, however, the officer's actions must reasonably relate to the purpose of the original stop. *United States v. Bell*, 555 F.3d 535, 541 (6th Cir.2009). "The core question concerning when a traffic stop turns into a Fourth Amendment issue has been framed as: 'at what point in time did the purpose of the traffic stop end and the detention of the driver and the [vehicle's]

occupants * * * begin?'" *United States v. Bonilla,* 357 Fed.Appx. 693, 696 (6th Cir.2009), citing *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir.2008).

{¶17} In this case, the state focuses on the amount of time that elapsed between the time of the initial stop and the point that Patrolman Feierabend conducted the canine sniff. According to the state, there was no prolonged delay because Patrolman Haslar testified that only ten minutes had elapsed from the time of the initial stop until the canine sniff.

{¶18} We note that Ohio courts do not apply a bright-line test as to a specific amount of time that has elapsed for the sake of determining if the traffic stop was unreasonably prolonged. Instead, courts must look at the totality of the circumstances to determine if there was a prolonged delay. Here, Haslar's testimony indicates that he had finished running the LEADS inquiry on Fontaine and had begun "writing out a written warning for the speed" prior to Patrolman Feierabend arriving on the scene. This testimony reveals that Patrolman Haslar's subsequent detention of Fontaine for the purpose of conducting the canine sniff was unrelated to the traffic violation. Indeed, instead of giving Fontaine the citation notice and sending him on his way, Patrolman Haslar detained him further and placed him in his police cruiser for the sake of conducting the canine sniff. At this point, the scope of the initial stop had been exceeded and Patrolman Haslar was required to have reasonable suspicion that criminal activity was afoot.

{¶19} As noted by the Ohio Supreme Court, once the purpose of the traffic stop

has ended, "the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." (Citations omitted.) *Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 15.

{¶20} And here, we find that no such evidence exists. We agree with the trial court that "overly polite" and "heavy breathing" are not sufficient indicators that give rise to a reasonable suspicion of criminal activity. These factors considered collectively simply do not support such a finding. Since Patrolman Haslar did not have a reasonable suspicion of criminal activity to warrant the canine sniff, the prolonged detention to do so violated Fontaine's constitutional Fourth Amendment rights. *See Illinois v. Caballes*, 543 U.S. 405, 408-409, 125 S.Ct. 834 (2005) (stating that a suspicionless canine sniff during a traffic stop violates the Fourth Amendment if it "prolong[s the stop] beyond the time reasonably required to complete [the] mission" of issuing a ticket).

{¶21} Accordingly, we find that the trial court properly granted the motion to suppress and overrule the state's sole assignment of error.

{¶22} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR