[Cite as *Ashland v. Zehner*, 2012-Ohio-5545.]

ACOURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| CITY OF ASHLAND | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-25 |
| LISA A. ZEHNER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Ashland County
                             Court of Common Pleas Court, Case
                             No.12-CRB-408

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      November 29, 2012

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DAVID HUNTER                              THOMAS MASON
Ashland City Law Director's Office        Mason, Mason & Kearns
1213 East Main Street                     P.O. Box 345
Ashland, OH  44805                        Ashland, OH 44805

*Gwin, P.J.*

{¶1}   Appellant Lisa A. Zehner ("Zehner") appeals the June 1, 2012 Judgment of the Ashland Municipal Court overruling her motion to suppress evidence. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2}   On May 16, 2012, a motion to suppress evidence was filed on behalf of Zehner. The following evidence was presented during the hearing on that motion to suppress.

{¶3}   On March 30, 2012, Zehner was a passenger in a car that was driven by John Byers. Officer Dan Ratcliff of the Ashland Police Department stopped that vehicle for following a vehicle too closely. Officer Ratcliff activated the cruisers lights and siren. Byers slammed on the brakes of his vehicle, stopping in the middle of the road. Officer Ratcliff used the cruisers public address system to tell Byers to pull his car off to the side of the road.

{¶4}   As Officer Ratcliff approached the driver side of the car, Byers immediately became argumentative and hostile. After obtaining Byers' information, Officer Ratcliff returned to his vehicle to begin his investigation. During this time it came to Officer Ratcliff's attention that the plates on Byers' car did not belong to the vehicle that Byers was driving; however, the plates were registered to another vehicle Byers had owned. Further, the insurance card that Byers had given Officer Ratcliff also listed a different vehicle.  Officer Ratcliff learned that Byers had a history of driving with fictitious plates on his vehicles. As Officer Ratcliff continued his investigation to determine whether the plates were lawfully on the car that Byers was presently driving, Officer

Ratcliff noticed Byers and Zehner talking back and forth and making "furtive movements" in the front seat. Officer Ratcliff radioed the canine handling officer, Officer Freelon, to ask him to come do a drug sweep of the vehicle with his canine partner. The canine did not give a positive alert on the vehicle.

{¶5} Officer Ratcliff, who had not yet finished writing the citation, approached the driver side of the car and attempted to explain to Byers "everything that was going on." Byers who was still very hostile gave conflicting accounts of where he was going and why he was so upset. At this point, Officer Ratcliff, who has known Zehner for "quite some time" asks Zehner if he can speak to her. Zehner agreed. Officer Ratcliff responded, "Come back here." The two spoke at the rear of Byers' car.

{¶6} Officer Ratcliff began to question Zehner about why Byers was upset and what was going on inside the vehicle. He further asked Zehner whether she had any concealed drugs or weapons. Zehner replied that she did not. Officer Ratcliff testified that he then asked Zehner, "Do you mind if I check you for drugs or weapons?" Officer Ratcliff testified that Zehner consented to the search. (T. at 19; 23; 40; 42; 45; 46). During the search, Zehner informed Officer Ratcliff that she did have a small amount of marijuana in her pocket.

{¶7} Zehner was issued a citation for possession of marijuana in violation of City of Ashland Codified Ordinance 513.03, a fourth degree misdemeanor.

{¶8} After the trial court overruled her motion to suppress, Zehner entered a plea of "no contest" to the charge on April 13, 2012. The trial court sentenced Zehner to a thirty-day suspended jail sentence, one-year probation, a fine of $150.00, and suspended her operator's license for six months.

*Assignments of Error*

**{¶9}** Zehner raises one assignment of error,

**{¶10}** "I. THE TRIAL COURT ERRONEOUSLY OVERRULED THE APPELLANT'S MOTION TO SUPPRESS WHERE A POLICE OFFICER DURING A ROUTINE TRAFFIC STOP REMOVED THE APPELLANT, A PASSENGER, FROM THE VEHICLE AND CONDUCTED A SEARCH OF HER PERSON ABSENT REASONABLE SUSPICION OR PROBABLE CAUSE."

*Analysis*

**{¶11}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 2003-Ohio-5372 at ¶8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988(1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583(1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra. However, once an appellate court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, also, *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to

inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**{¶12}** In the case at bar, the parties agree that the car in which Zehner was a passenger was lawfully stopped for a traffic violation. The parties further agree that Officer Ratcliff could lawfully order Zehner to get out of the car during the investigatory traffic stop. In the case at bar, Zehner contends, however, that Officer Ratcliff conducted a warrantless search without having a reasonable suspicion that she may be armed and, thus, dangerous to the police officer and others.

**{¶13}** When detaining a motorist for a traffic violation, an officer may delay a motorist for a time sufficient to issue a ticket or a warning. *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶12. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. Id. Further, in determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *Id.,* See, also *State v. Woodson,* 5th Dist. No. 2007-CA-00151, 2008-Ohio-670 at ¶21.

**{¶14}** However, "[a]n officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *Batchili* at ¶ 34; *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-882, 95 S.Ct. 2574, 45 L.Ed.2d 607(1975). "In determining whether a detention is reasonable, the court must look at the totality of

the circumstances." *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988). See*, also Woodson,* supra at ¶ 22.

**{¶15}** The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. See *Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842(2005); *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110(1983); *State v. Carlson*, 102 Ohio App.3d 585, 594, 657 N.E.2d 591(9th Dist. 1995); *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993). The officer needs no suspicion or cause to "run the dog around" the stopped vehicle if he does it contemporaneously with the legitimate activities associated with the traffic violation. *See Caballes,* 543 U.S. at 409, 125 S.Ct. at 837-38. A canine walk-around of a vehicle, which occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop and issue a citation does not violate the individual's constitutional rights. *Caballes*, supra. This is so because the detention was not illegally prolonged in order to make the walk-around. See, *State v. Batchili,* 113 Ohio St.3d 403, ¶19.

**{¶16}** In the case at bar, the officers had lawfully stopped the automobile in which appellant was a passenger for a traffic violation.

The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. See *Brendlin,* 551 U.S., at 258, 127 S.Ct. 2400**.** An officer's inquiries into matters

unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. See *Muehler v. Mena,* 544 U.S. 93, 100-101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005).

*Arizona v. Johnson*, 517 U.S. at 333, 129 S.Ct. 781, 172 L.Ed.2d 694.

{¶17} In the case at bar, there simply is no evidence to suggest that Zehner's detention for the traffic violation was of sufficient length to make it constitutionally dubious. The stop lasted a total of 32 minutes. We wish to emphasis that an officer cannot simply delay writing out the citation in order to conduct a "fishing expedition." However, in the case at bar, at the time she was asked to consent to a search, Officer Ratcliff was still in the process of investigating Byers' behavior and the reasons for the initial stop. Any delay in this case was occasioned by Byers' conduct toward the officers which included, slamming on his brakes, stopping in the middle of the street, and remaining argumentative and hostile throughout the encounter. We do not perceive it to be irrational for an officer to separate a passenger from the vehicle and other occupants in order to ascertain if there is a problem or if the passenger is in need of assistance based upon the officer's observations and impressions of the parties' actions during the stop. Further, Zehner gave permission for a search of her person and volunteered that she had contraband concealed in her pocket.

{¶18} One well-established exception to the warrant requirement is the consent search. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. *See United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153

L.Ed.2d 242(2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640(1990). In *Schneckloth*, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227–228. *See, also State v. Fry*, 4th Dist. No. 03CA26, 2004–Ohio–5747 at ¶18.

{¶19} The United States Supreme Court further noted, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado* 466 U.S. at 216, 104 S.Ct. 1758, 80 L.Ed.2d 247; *Drayton*, 536 U.S. at 205, 122 S.Ct. 2105, 153 L.Ed.2d 242. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854(1983); *State v. Barnes* (1986), 25 Ohio St.3d 203, 495 N.E.2d 922(1986); *State v. McConnell*, 5th Dist. No. 2002CA00048, 2002-Ohio-5300 at ¶8. The proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997). The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless

clearly erroneous. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041, 36 L.Ed.2d 854; *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347(1996).

**{¶20}** In *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997), the Supreme Court noted,

We find *Bustamonte* instructive in defining when permission to search is truly consensual under the totality of the circumstances:

'[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.' *Id.,* 412 U.S. at 248-249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.

80 Ohio St.3d at 242-243, 685 N.E.2d at 769.

**{¶21}** The burden of proving that the suspect voluntarily consented to the search rests upon the prosecution. *Schneckloth, supra; Danby, supra*; *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); *State v. Hassey*, 9 Ohio App.3d 231, 459 N.E.2d 573(10th Dist. 1983). The state's burden is not is not satisfied by showing a mere submission to a claim of lawful authority. *Robinette,* 80 Ohio St.3d at 243, 685 N.E.2d at 770. The state has the burden to prove, by "clear and positive" evidence, not only that the necessary consent was obtained, but that it was freely and

voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61(1988). "Clear and positive evidence" is the substantial equivalent of clear and convincing evidence. *State v. Ingram*, 82 Ohio App.3d 341, 346, 612 N.E.2d 454(2nd Dist. 1992).

**{¶22}** The Ohio Supreme Court has defined "clear and convincing evidence" as follows:

> The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23(1986); *see, also*, *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54(1990).

**{¶23}** In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Schiebel,* 55 Ohio St.3d at 74, 564 N.E.2d 54. Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954).

**{¶24}** In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶25}** Ordinarily, the issue of whether an individual voluntarily consented to a search is a question of fact, not a question of law. *Ohio v. Robinette*, 519 U.S. at 40, 117 S.Ct. 417, 136 L.Ed.2d 347; *Schneckloth,* 412 U.S. at 227, 93 S.Ct. 2041, 36 L.Ed.2d 854.

**{¶26}** In the case at bar, Officer Ratcliff testified that Zehner consented to the search of her person and voluntarily disclosed that she possessed marijuana. In addition, the record is silent as to Zehner's feelings with regard to her ability to decline Officer Ratcliff's request. Zehner did not testify during the suppression hearing.

**{¶27}** Our review of the record indicates that when Officer Ratcliff requested Zehner's consent, she appeared cooperative and did not appear to resist the officer's request. Additionally, the record is clear that Zehner was not under arrest when Officer

Radcliff requested consent; the stop occurred in the afternoon on a public street; and there is no evidence that Officer Radcliff indicated to Zehner that he could search her regardless of her consent.

{¶28} We believe that the totality of the circumstances surrounding the interaction fails to show any coercive or threatening tactics. Therefore, we find that Zehner voluntarily consented to the search.

{¶29} Accordingly, Officer Ratcliff's search of Zehner was consensual in nature, thereby making the Fourth Amendment inapplicable. The officer's request to search was permissible. *United States v. Drayton; Schneckloth v. Bustamonte, State v. Comen.* Zehner's sole assignment of error is overruled.

{¶30} The Judgment of the Ashland Municipal Court, Ashland County, Ohio is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JULIE A. EDWARDS


WSG:clw 1031

[Cite as *Ashland v. Zehner*, 2012-Ohio-5545.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CITY OF ASHLAND | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LISA A. ZEHNER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-25 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Ashland Municipal Court, Ashland County, Ohio is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JULIE A. EDWARDS