[Cite as *State v. Carrillo*, 2023-Ohio-3264.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case Nos. 22CAA090062 |
| | : | 22CAA090063 |
| EMANUEL CARRILLO | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Court of Common Pleas, Case Nos. 21CRI20723 and 22CRI010016 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | September 13, 2023 |

APPEARANCES:

For Plaintiff-Appellee:

MELISSA A. SCHIFFEL
DELAWARE CO. PROSECUTOR
KATHERYN L. MUNGER
145 North Union St., 3rd Floor
Delaware, OH 43015

For Defendant-Appellant:

WILLIAM T. CRAMER
470 Olde Worthington Road, Ste. 200
Westerville, OH 43082

*Delaney, J.*

{¶1} Appellant Emanuel Carrillo appeals from the August 10, 2023 Judgment Entry of Prison Sentence of the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

{¶2} The instant cases are consolidated [5th District Delaware Nos. 22CA090062 and 22CA090063] and arise from two cases in the Delaware County Court of Common Pleas, case nos. 21CR-I-12-0723 and 22CR-I-01-0016.

### FACTS AND PROCEDURAL HISTORY

{¶3} This case arose from a traffic stop of a truck with faulty license-plate illumination. A K-9 sniff at the scene, and a subsequent search of hidden compartments in the vehicle, yielded large amounts of methamphetamine, cocaine, fentanyl, and cash.

{¶4} The following facts are adduced from the record of the suppression hearing and appellant's change-of-plea and sentencing hearing.

*Unilluminated license plate leads to traffic stop*

{¶5} At the suppression hearing, the sole issue was the officer's decision to make the traffic stop.

{¶6} On December 16, 2021, around 3:11 a.m., Ptl. Weirich of the Delaware Police Department was sitting stationary in a parking lot on U.S. 23, in uniform and a marked vehicle. Weirich has 11 years' experience as a patrol officer and his duties include monitoring traffic. He noticed a black Chevy Silverado northbound on U.S. 23 with a dark-tinted passenger window. As the vehicle passed him, Weirich couldn't read the license plate and therefore could not determine whether the tint level was a violation.

{¶7} Weirich caught up to the vehicle to check the plate but was unable to read letters and numbers because the plate was poorly illuminated. T. 11. As he followed the vehicle, at first he was unable to discern whether any plate was present at all. T. 24. Weirich followed the vehicle for a while in the adjacent lane, unable to read the markings on the plate. In his experience, a plate must be legible from a distance of 50 feet of the vehicle, and this plate was not legible.

{¶8} Weirich performed a traffic stop and was not able to read the plate until the vehicle was stopped. His vehicle dash cam and body cam activated when he turned on lights and sirens because he observed a slight lane violation as the truck went over the right fog line.

{¶9} As Weirich approached the truck, his primary concern was officer safety, but he noticed a New Mexico license plate was present and legible up-close; the left plate light was illuminated, but the right license-plate light was out. Weirich audibly commented, "It looks fine walking up on it." T. 30. Weirich photographed the plate and the photos were admitted at the suppression hearing as appellee's exhibits 2 and 3. Weirich cited appellant for no license-plate light.

{¶10} After the truck stopped, Weirich contacted appellant, the driver, who was the sole occupant of the vehicle other than his dog. Weirich ran appellant's license information and learned his license was suspended. Also, the plate was registered to a maroon pickup truck, but this vehicle was black. Appellant's explanation of the purpose of his trip from New Mexico to the Detroit suburbs also alerted Weirich's inclination to investigate further.

*Sniff, searches, narcotics, and two indictments*

{¶11} The following evidence is adduced from the record of the change-of-plea and sentencing hearing, and was not at issue in the suppression hearing.

{¶12} A K-9 sniff alerted on the vehicle, leading to a probable-cause search yielding a white rock-like substance in a clear plastic sandwich bag in the left AC dash vent. The substance appeared to be crystal methamphetamine and weighed 78.6 grams. A wad of folded U.S. currency was found in the right AC vent. Additional folded U.S. currency was located in the center dash in "a natural void behind the center cubby area." Appellant claimed ownership of the cash behind the center dash area, but denied knowledge of the narcotics and cash in the AC vents.

{¶13} Officers noticed what appeared to be tool marks on the interior of the vehicle. A subsequent search yielded hidden compartments containing "bricks" of cocaine and fentanyl, in addition to more currency.

{¶14} In case number 21CR-I-12-0723, appellant was charged by indictment with one count of aggravated drug trafficking [methamphetamine] pursuant to R.C. 2925.03(A)(2) and one count of aggravated drug possession [methamphetamine] pursuant to R.C. 2925.11(A), both felonies of the second degree.

{¶15} In case number 22CR-I-01-0016, appellant was charged by indictment with one count of trafficking in cocaine pursuant to R.C. 2925.03(A)(2), a felony of the first degree [Count I]; one count of possession of cocaine pursuant to R.C. 2925.11(A), a felony of the first degree [Count II]; one count of trafficking in a fentanyl-related compound pursuant to R.C. 2925.02(A)(1), a felony of the first degree [Count III]; and one count of possession of a fentanyl-related compound pursuant to R.C. 2925.11(A), a felony of the

first degree [Count IV]. Counts I through IV were accompanied by forfeiture and major-drug-offender specifications.

{¶16} On January 14, 2022, appellee filed a motion to join the two cases because they arose from the same course of conduct. On February 3, 2022, the trial court granted the motion to join indictments.

{¶17} On February 28, 2022, appellant filed a motion to suppress evidence flowing from the traffic stop and arrest, and appellee responded with a memorandum in opposition. The trial court scheduled an evidentiary hearing for April 18, 2022. After the evidentiary hearing, appellee filed an additional supplemental response on April 22, 2022, to which appellant responded on April 25, 2022.

{¶18} The trial court overruled appellant's motion to suppress by judgment entry dated June 10, 2022.

{¶19} On August 2, 2022, the parties entered a Crim.R. 11(F) plea agreement. The terms of this agreement stated appellant would plead no contest to "a lesser included offense of that set forth in Count Three of the Indictment, being Trafficking in between 50g-100g of a Fentanyl Related Compound, a felony of the first degree." In return, appellee would dismiss Counts I, II, IV, and the major-drug-offender specifications in case numbers 22CR-I-01-0016 and 21CR-I-12-0723. Appellant agreed to forfeit a total of $31,558 in currency, the parties waived a presentence investigation, and acknowledged the trial court must impose a mandatory prison term of 11 to 16.5 years.

{¶20} Appellant thereupon withdrew his previously-entered pleas of not guilty and entered a plea of no contest to Count III, "a lesser-included offense, trafficking in a

fentanyl-related compound" in violation of R.C. 2925.03(A)(1), a felony of the first degree. The trial court imposed a mandatory prison term of 11 to 16.5 years.

{¶21} Appellant now appeals from the trial court's Judgment Entry of Prison Sentence dated August 10, 2022.

{¶22} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. APPELLANT'S RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH AMENDMENT AND OF THE OHIO CONSTITUTION [WERE] VIOLATED WHEN HE WAS SUBJECT TO A TRAFFIC STOP THAT WAS NOT SUPPORTED BY A REASONABLE SUSPICION OF CRIMINAL ACTIVITY."

{¶24} "II. INDEFINITE PRISON TERMS IMPOSED UNDER THE REAGAN TOKES LAW VIOLATE THE JURY TRIAL GUARANTEE, THE DOCTRINE OF SEPARATION OF POWERS, AND DUE PROCESS PRINCIPLES UNDER THE FEDERAL AND STATE CONSTITUTIONS."

**ANALYSIS**

**I.**

{¶25} In his first assignment of error, appellant argues the trial court should have granted his motion to suppress because his license plate was adequately illuminated and Weirich could not lawfully extend the detention after he walked up to the vehicle and determined it "looked ok." We disagree.

{¶26} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713

N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶27} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶28} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry*, the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶29} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has reemphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that

they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

*United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶30} In the instant case, Weirich stopped appellant to investigate the illegible license plate. Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a de minimis violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura*, 5th Dist. No. 08 CA 95, 2009-Ohio-3339, 2009 WL 1916902, ¶ 14, citing *State v. McCormick*, 5th Dist. No.2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, 2013 WL 1209351, ¶ 60.

{¶31} In the instant case, the trial court found the traffic stop was justified by Weirich's suspicion of a license-plate violation per R.C. 4513.05(A), which requires the

following in pertinent part: "Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear." Appellant acknowledges our decision in *State v. Ferrell,* which is instructive here:

> Appellant * * * maintains the trial court applied an erroneous legal standard by effectively requiring an operator of a motor vehicle to provide "full illumination" of the rear license plate. He urges that the trial court misinterpreted our affirmance of the denial of a suppression motion in *State v. Helline,* Ashland App. No. 01COA01424, 2001–Ohio–1899. The facts of *Helline* entail a dual-light system on a rear plate where one bulb was completely out and the other was heavily covered with dirt. *See id.* at 1. We note the relevant traffic statute, R.C. 4513.05, provides in pertinent part: " * * * Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, * * * and render it legible from a distance of fifty feet to the rear. * * * " As noted in our recitation of the facts of the present case, the trial court was supplied with several photographs of the rear license plate area of appellant's Saab, taken some time after the stop in question. The trial court judge subsequently stated that he was "willing to accept the photos as a true representation of the appearance of the Saab's license plate at the time of the stop." Judgment Entry Denying Motion to Suppress, November 15, 2012, at 10. As appellant

correctly notes, the trial court, although ultimately determining that the stop was valid, concluded that based on the photographs, the rear license plate may have been at least partially illuminated, although more than half of the letters/number on the plate appeared to be unlit. *See id.* at 10. The trial court judge, nonetheless, did "give credence to Officer Leighty's testimony, which convinces me that the plate did not appear to be properly illuminated at the time of the traffic stop." *Id.* at 10.

> *State v. Ferrell*, 5th Dist. Delaware No. 13 CAC 01 0001, 2013-Ohio-4651, ¶ 13.

{¶32} Similar to the trial court in *Ferrell*, the trial court in the instant case determined from Weirich's testimony and appellee's exhibits that the license plate was not properly illuminated. Appellant argues the trial court's finding is not supported by competent, credible evidence because the plate was at least partially illuminated.

{¶33} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Kay*, 5th Dist. Stark No. 2022 CA 00020, 2022-Ohio-3538, ¶ 13, citing *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Appellant argues appellee's exhibits demonstrate the plate was visible, but Weirich testified he was unable to read the plate as he followed the vehicle on the roadway. The bodycam video and photographs show the appearance of the plate after the stop was effectuated.

{¶34} The trial court's findings that at first, Weirich could not tell whether the truck had a license plate at all, and subsequently determined the plate was not visible within 50 feet, are supported by the officer's testimony. As the trier of fact, the trial court was free to accept or reject any or all of the testimony presented at the suppression hearing. *State v. Frye*, 5th Dist. Stark No. 2006CA00363, 2007-Ohio-7111, ¶ 48. An appellate court "cannot, and will not, 'second-guess a trial court's decision to believe the testimony in the record,'" especially when the trial court had the benefit of comparing the testimony with the exhibits. *State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 20, internal citation omitted.

{¶35} The trial court did not err in finding Weirich had a sufficient basis upon which to stop appellant's vehicle.

{¶36} Appellant further argues Weirich had no authority to extend the traffic stop for further investigation after he stated "looks fine walking up on it."

{¶37} Weirich was within constitutional authority to make contact with appellant and investigate further. "When detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282. This "includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Id.* Further, "in determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.* An officer "may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or

expanded investigation is supported by a reasonable, articulable suspicion that some further criminal activity is afoot." *State v. Woodson*, 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, 2008 WL 442569, ¶ 12 ,*quoting Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282 at ¶ 34.

{¶38} "Reasonable suspicion is "* * * something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist. 1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 5th Dist. Stark, 2018-Ohio-1466, 110 N.E.3d 960, ¶ 23, *citing Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No. 2005-L-073, 2006-Ohio-1450, 2006 WL 766541, ¶ 13 (internal citation omitted).

{¶39} The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors that fall into four general categories: (1) location; (2) the officer's experience, training, or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. *State v. Bobo,* 37 Ohio St.3d 177, 178-79, 524 N.E.2d 489 (1988); *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). No single factor is dispositive; the decision must be viewed based on the totality of the circumstances. *Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489 at paragraph one of the syllabus; *State v. White,* 9th Dist. No. 05CA0060, 2006-Ohio-2966, 2006 WL 1627392, ¶ 16. We believe that these

factors would be helpful when analyzing whether a stop was unconstitutionally prolonged. *State v. Roberts*, 5th Dist. Licking No. 2023-CA-00011, 2023-Ohio-2763, ¶ 18.

{¶40} In the instant case, Weirich testified he noticed the plate "looked ok" as he walked up to the driver, but the plate was secondary to his concern for officer safety in that moment. Upon speaking to appellant, he learned appellant was driving from New Mexico to the Detroit suburbs with no visible baggage; appellant's driver's license was suspended; and upon running the plate, the registration came back to a different vehicle.

{¶41} Additional information raised Weirich's suspicions as his encounter with appellant continued, but evidence at the suppression hearing was limited to the stop itself and Weirich's initial contact with appellant. Defense trial court told the trial court at the opening of the hearing that the suppression motion was strictly limited to the stop, "not the K-9 and not [appellant's] statements." T. 4-5. The scope of the suppression hearing therefore did not include the officer's development of reasonable suspicion to continue to detain appellant.

{¶42} Appellant implies Weirich's ability to investigate ended with his comment that the plate "looked ok" when he viewed it close-up, but we disagree; Weirich was authorized to make contact with appellant and investigate further, and additional reasonable suspicion arose at that point. See *Batchili*, supra, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282.

{¶43} The trial court's decision overruling appellant's motion to suppress evidence is based upon competent, credible, evidence. We further find that, because Weirich had a reasonable and articulable suspicion to continue appellant's detention, no violation of

appellant's Fourth Amendment rights has been demonstrated. *Roberts*, supra, 5th Dist. Licking No. 2023-CA-00011, 2023-Ohio-2763, ¶ 25.

{¶44} The first assignment of error is overruled.

II.

{¶45} In his second assignment of error, appellant argues his mandatory indefinite prison term violates the jury trial guarantee, the doctrine of separation of powers, and due process principles under the federal and state constitutions. Because the Ohio Supreme Court recently overruled these arguments in *State v. Hacker*, 2023-Ohio-2535, ——— N.E.3d ———, and we have previously overruled these arguments, we disagree.

{¶46} Pursuant to *State v. Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764, 198 N.E.3d 797, the Ohio Supreme Court held that constitutional challenges to the Reagan Tokes Act are ripe for review on direct appeal. *State v. Turner*, 5th Dist. Licking No. 2022 CA 00040, 2023-Ohio-441, 2023 WL 2017516, ¶ 40.

{¶47} In *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, at ¶ 6, this Court set forth its position on the arguments raised in appellant's second assignment of error:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501 [2020 WL 7054428], we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so

holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153 [2020 WL 4919694]; *State v. Hacker*, 3rd Dist. Logan, 2020-Ohio-5048 [161 N.E.3d 112]; *State v. Maddox*, 6th Dist. Lucas, 2022-Ohio-1350 [188 N.E.3d 682]; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837 [2020 WL 4279793]; *State v. Delvallie*, 8th Dist. Cuyahoga, 2022-Ohio-470 [185 N.E.3d 536]. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353 [2021 WL 1530036].

{¶48} Based on the forgoing authority, the trial court did not err in sentencing appellant to an indefinite term. *Turner*, supra, 2023-Ohio-441, ¶ 42; *State v. Corbett*, 5th Dist. No. 22CA0013, 2023-Ohio-556, 209 N.E.3d 280, ¶ 46; *Hacker,* supra; *State v. Cooper*, 5th Dist. Stark No. 2022CA00091, 2023-Ohio-2897, ¶ 61.

{¶49} Appellant's second assignment of error is overruled.

**CONCLUSION**

{¶50} Appellant's two assignments of error are overruled and the judgment of the

Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.